IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **DB ENTERPRISES DEVELOPERS – BUILDERS, INC.**<br>**255 East Woodland Avenue**<br>**Springfield, PA 19064,** | :<br>:<br>: | CIVIL ACTION |
| | : | HON. |
| PLAINTIFF, | : | |
| vs. | : | |
| **BOROUGH OF NORWOOD**<br>**10 W. Cleveland Avenue**<br>**Norwood, PA 19074,** | :<br>:<br>: | JURY TRIAL DEMANDED |
| DEFENDANT. | : | |
| | : | NO.: |

**COMPLAINT (CIVIL ACTION)**

I. **NATURE OF ACTION**

1. This is an action for damages and other relief, arising under 42 U.S.C. §3601 *et seq.* (the "Fair Housing Act") and 42 U.S.C. §1983, the Civil Rights Act of 1871.

II. **JURISDICTION AND VENUE**

2. Jurisdiction is properly vested in this Court, due to the presence of federal questions forming the basis of plaintiffs' claims, 28 U.S.C. §1331.

3. At all times material hereto, defendant, by and through its officials with policymaking authority, acted under color of or pursuant to state law.

4. Venue is properly laid in this judicial district, as all parties are located therein, and all acts giving rise to the complaint have occurred therein.

### III. <u>PARTIES</u>

5. Plaintiff DB Enterprises Developers-Builders, Inc. [hereinafter referenced as "DBE or plaintiff"] is a Pennsylvania corporation, regularly conducting business within the Commonwealth, and maintaining its principal office therein at the above-captioned address in Delaware County.

6. Defendant Borough of Norwood [hereinafter referenced as "Norwood" or "the Borough"] is a municipal entity organized under Pennsylvania law, headquartered at the above-captioned address in Delaware County.

7. Norwood exercises authority over land use, zoning and building permits within its geographical territory.

### IV. <u>FACTUAL ALLEGATIONS</u>

8. As of the census of 2010, the population of Norwood was 5,890 residents.

9. The Borough is neighbor to communities with significant nonwhite populations, including the Borough of Folcroft [45% nonwhite, including 40% Black] and the town of Darby [63% nonwhite, 60% Black].

10. Despite its proximity to these substantial minority communities, Norwood's population has remained overwhelmingly white. As of the 2010 census, 95% of its residents were white, and fewer than 2% were Black.

11. In material part, this demographic disparity has been preserved by various exclusionary and discriminatory acts and policies maintained by the Borough and its officers, including those alleged herein as encountered by plaintiff.

12.     DBE is a well established builder and developer of housing throughout Delaware County and has successfully completed many projects, including those providing high quality housing for low – and moderate-income families.

13.     Sometime in 2005, DBE purchased equitable ownership of a site consisting of 18.1 acres of land formerly operated as a sewage treatment facility by the Muckinipates Sewer Authority.

14.     The site was located within the Borough's Townhouse Residential zoning district.

15.     Plaintiff planned to build 98 townhouses on the site.  Because the homes would be fairly priced and rented and/or sold without improper discrimination, plaintiffs anticipated that the homes would be occupied by a diverse group of residents, including a substantial number of Blacks and other members of non-white communities.

16.     Plaintiff submitted a Preliminary Plan for Subdivision and Land Development of the site to the Borough and its Planning Commission on April 18, 2006.

17.     Between April 18, 2006 and September 26, 2006, plaintiff provided appropriate, complete revisions to the preliminary plan in response to reviews and comments issued by the Borough and its Planning Commission and/or their engineers.

18.     The plan was in full compliance with the Borough's zoning ordinance.

19.     In September 25, 2006, without a hearing or other opportunity for plaintiffs to be heard, the Borough denied DBE's development application.

20.     DBE filed an appeal with the Delaware County Court of Common Pleas.

21.     Throughout the pendency of the appeal, plaintiff, at great expense, continued efforts to address the stated concerns of the Borough, including the submission of multiple revised engineering plans, and the reduction of the number of townhouses from ninety-eight to ninety-

six.  The Borough persisted in denial of the application, and took additional steps to obstruct DBE's efforts to develop the site.

22.    One such measure was the 2008 passage through the Norwood Borough Council of a "spot zoning" ordinance reclassifying a portion of the Townhouse Residential zoning district to "open space."  This reclassification affected only the Muckinipates site of which DBE is the equitable owner, and which plaintiffs had proposed developing.

23.    The intentional, discriminatory intent of the Borough's conduct was confirmed by its then mayor, who told Davoud Baravordeh, DBE's owner that the Borough would "never" approve plaintiff's development plans because Baravordeh was a builder who "sells homes to Black people," and the Borough Council did "not want Blacks in Norwood Borough, and the new development will bring them in."

24.    In 2010, after protracted litigation of DBE's appeal, the parties appeared to reach a settlement through the Pennsylvania judicial mediation program.

25.    Under the terms of the settlement, DBE agreed to a further reduction in the number of townhouses to be built on the site, from ninety-six to eighty units, and the provision of additional parking.  The Borough agreed not to withhold approval of a final plan unreasonably.

26.    On September 7, 2010, DBE duly submitted plans to the Borough in full compliance with the terms of the settlement.

27.    Despite its purported agreement with plaintiff, which had been approved by the Court of Common Pleas, the Borough arbitrarily refused to review the plans submitted by plaintiff or to issue any permit or approvals.

28.    Accordingly, DBE filed a motion to enforce the settlement with the Court of Common Pleas of Delaware County.

29. On or about January 19, 2011, DBE, through its attorneys, requested a conference with the Court. In immediate response, the Borough issued a formal denial of the application plaintiff had submitted pursuant to the parties' settlement.

30. Following the court conference, Judge Proud of the Delaware County Court of Common Pleas issued a 7/6/11 order appointing an independent engineer to review DBE's plans and recommend any changes necessary to address any Borough concerns.

31. The independent engineer, James MacCombie completed his review, and submitted his report to the Court, complete with recommendations. The MacCombie report further recommended that the plans submitted by DBE be "deemed approved" due to the Borough's failure to supply any written documentation of any defects in them.

32. By order dated December 21, 2011, the Court adopted the MacCombie report as a final order, directing DBE to proceed with the development, following submission of a Final Plan to the Borough and its Planning Commission complying with the recommendation of the MacCombie report.

33. On January 12, 2012, DBE submitted such a Final Plan.

34. Sometime thereafter, the Borough arbitrarily deemed the Plan "incomplete" and took no other action until March 23, 2012, when it submitted comments on the Plan through its engineer.

35. At further expense and effort, plaintiff prepared responses fully addressing all concerns raised by the Borough's comments. The Borough responded with yet more comments and purported concerns on May 30, 2012.

36. DBE fully addressed all of the May 30, 2012 comments and concerns. Again, the Borough arbitrarily delayed approving or otherwise acting on the Final Plan.

37. Instead, on March 15, 2013 – more than eighteen months after submission of a Final Plan submitted pursuant to court order and the agreement of the parties – the Borough asked the Delaware County Planning Commission to review the Final Plan.

38. On June 30, 2013 the Delaware County Planning Commission recommended approval of the Plan, contingent only upon receipt of a "stream buffer waiver," related to stream crossing access at the location of the site. DBE agreed to implement a "buffer" in compliance with the Commission's recommendations.

39. Plaintiff took all steps necessary to meet the County's recommendation, but the Borough again refused to act on the Plan until December 10, 2013 when it issued a written decision denying the Final Plan, notwithstanding multiple reviews confirming its propriety, the parties' agreement, and a court order.

40. The Borough's written decision of 12/10/13 raised purported issues never before identified by the Borough, including a purported failure to obtain permission for the construction of the site's access road, the lack of "secondary access," the need to disconnect an old gas line and install a new one, and the need to document the lack of environmental concerns.

41. None of these newly created issues established valid reasons for further delay in compliance with the Delaware County Court's 2010 and 2011 orders directing approval of DBE's plans and permitting the development to begin.

42. Accordingly, DBE filed a petition for contempt against the Borough, which remains pending.

43. Notwithstanding the impropriety of the Borough's newly created obstacles to approval, plaintiff proceeded to address each of the Borough's concerns.

44. DBE's responses to the concerns, all undertaken at great expense, included:

      a) an offer to purchase from the Borough the right to construct an access road over a small parcel of land owned by the Borough;

      b) preparation of a plan to construct an "emergency [secondary] access road;"

      c) preparation of plans to install a new gas line at DBE's expense;

      d) payment of its environmental engineer to conduct an investigation, in addition to those previously conducted in development of the plans, to identify any environmental concerns.

45. DBE's supplemental environmental investigation identified a small amount of sludge in an area of the site, apparently left from the old sewage treatment operation.

46. DBE prepared a detailed plan for removal of the sludge and agreed to undertake the removal at DBE's expense.

47. Since 2014 through the present day, plaintiff has repeatedly requested the Borough to approve the plans or to take the action on them that would enable it to pursue a procedural remedy.

48. Despite these requests, and despite plaintiff's agreement to meet all of the Borough's concerns, the Borough continues to deny approval for the development of the site, which remains vacant.

49. Plaintiff has incurred more than one million dollars in expenses and has sustained lost future revenue due to the efforts to meet the Borough's demands and the Borough's arbitrary refusal to approve development of the site or afford plaintiff a procedural remedy.

## V. CAUSES OF ACTION

### COUNT I
### PURSUANT TO 42 U.S.C. §1983

50. Plaintiff incorporates each and every allegation set forth in every one of the afore-numbered paragraphs as if fully set forth herein.

51. Defendant has engaged in an intentional, arbitrary course of conduct toward plaintiffs as averred hereinabove, including but not limited to:

   a) its refusal to approve the plans submitted by plaintiff for development of the site;

   b) the issuance of a "spot ordinance" only affecting plaintiff and its economic interests and property rights;

   c) deliberately delaying resolution of issues so as to obstruct development of the site;

   d) violating the agreement of the parties which was adopted by a court, and which conferred property-related rights on plaintiffs.

52. This course of conduct has deprived DBE of its right to develop land to which it holds equitable title, frustrated DBE's appropriate use of its property, and caused DBE to suffer severe economic damages.

53. Said conduct by the Borough, which is ongoing, has violated, and continues to violate plaintiff's rights to due process and equal protection guaranteed by the Fourteenth Amendment to the United States Constitution.

### COUNT II
### PURSUANT TO THE FAIR HOUSING
### ACT 42 U.S.C. §3601, *ET SEQ.*

54. Plaintiff incorporate each and every allegation set forth in every one of the afore-numbered paragraphs as if fully set forth herein.

55. The legislative purpose of the Fair Housing Act ["FHA"] is "to provide, within constitutional limits, for fair housing throughout the United States." 42 U.S.C. §3601.

56. The Act makes unlawful discrimination against any person "in the terms, conditions or privilege of sale or rental of a dwelling" on account of "race, color, religion, sex, handicap, familiar status or national origin" or to have an intention to engage in such discrimination. *Id*. § 3604 (a)-(f).

57. Defendant's deliberate obstruction of the development proposed by plaintiff has been intended to restrict the amount of housing available in the borough to Blacks and other members of minority communities.

58. This intent was explicitly admitted to DBE's owner by George F. McCloskey, who, at the time of the admission, was Mayor and chief executive officer of the Borough.

59. This discriminatory intent has been further evidenced by the impact of defendant's conduct alleged herein, which has insured that the Borough's population remains overwhelmingly white, and has restricted the housing available to racial minorities.

60. The Borough's conduct is in violation of 42 U.S.C. §3404, and the economic harm directly resulting from that conduct renders plaintiff an "aggrieved person" as the Act defines the term in 42 U.S.C. §3413.

61. As a result of the Borough's discriminatory conduct, plaintiff has suffered economic damages, including but not limited to fees and costs expended in compliance with legal requirements and efforts to comply with the Borough's conditions for approval, lost revenue, and costs of maintaining property they cannot develop or use for commercial purposes.

62. These harms and damages are continuing and will persist unless and until the Borough property grants approval for the site's development.

## COUNT III
## PURSUANT TO 42 U.S.C. §1983

63. Plaintiff incorporates each and every allegation set forth in every one of the afore-numbered paragraphs as if fully set forth herein.

64. Defendant's conduct has alleged herein as violated plaintiff's federal rights under the FHA.

65. Plaintiff's harms and damages as alleged hereinabove have resulted from defendant's violation of those rights.

## VI. JURY DEMAND

66. Plaintiff demands a jury determination of all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff asks the Court to enter judgment in its favor and against defendant, and to grant:

a) an award of actual damages, attorney fees and costs pursuant to 42 U.S.C. 3413;

b) an award of actual, compensatory and general damages pursuant to 42 U.S.C. §1983;

c) an award of attorney fees and costs pursuant to 42 U.S.C. §1988;

d) such interests and other costs available under the applicable law;

e) injunctive relief, including but not limited to an order that the Borough grant all approvals and permits necessary to allow plaintiffs to proceed with the development of the site under appropriate conditions;

f) such other relief that the Court deems just and equitable.

Respectfully submitted,

*__Gerald J. Williams__*
GERALD J. WILLIAMS, ESQUIRE
ATTY I.D. #36418
CHRISTOPHER MARKOS, ESQUIRE
ATTY I.D. #
WILLIAMS CEDAR, LLC
1515 Market Street, Suite 1300
Philadelphia, PA  19102-1929
Telephone:  215.557.0099
Facsimile:   215.557.0673
Email:  gwilliams@williamscedar.com

Dated:  May 17, 2021