IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **DB ENTERPRISES DEVELOPERS-BUILDERS, INC.,** | : <br> : <br> : <br> :    **CIVIL ACTION** <br> : <br> *Plaintiff*,                    : <br> : <br> v.                                : <br> :    **NO. 21-2242** <br> **BOROUGH OF NORWOOD,**    : <br>           *Defendant.*     : <br> : |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                                         **May 31, 2023**

Plaintiff DB Enterprises Developers-Builders, Inc. alleges that Defendant Borough of Norwood used its zoning laws to obstruct and prevent Plaintiff from developing a tract of land located in the Borough for low income housing. Claiming that Defendant's actions were racially discriminatory, Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of the Due Process and Equal Protection Clauses and under the Fair Housing Act, 42 U.S.C. §3601, et seq. Defendant now moves for summary judgment on all claims against it. As all of Plaintiff's claims are untimely, I will grant the motion and enter judgment in favor of Defendant.

**I.**      **STATEMENT OF FACTS**

The following facts are taken from the evidence submitted by the parties. Where there is conflicting evidence about a particular fact, Federal Rule of Civil Procedure 56 requires that I view such evidence in the light most favorable to Plaintiff.[1]

---

[1] References to the parties' pleadings will be made as follows: Defendant's Statement of Undisputed Facts ("DSUF") and Plaintiffs' Response ("PR"). To the extent a statement is undisputed by the parties, I will cite only to the parties' submissions. If a statement is disputed and the dispute can be easily resolved by reference to the exhibits, I will cite the supporting exhibits. If a statement is disputed, but the dispute cannot be resolved by reference to the exhibits, I will note the dispute. I will not rely on any statement of fact that is unsupported by reference to a specific exhibit.

Plaintiff has been a builder of residential and commercial properties for close to forty years. (DSUF ¶ 1; PR ¶ 1.)  In early 2005, Plaintiff sought to build a townhouse project in the Borough of Norwood on land owned by the Muckinipates Sewer Authority (the "Authority").  (DSUF ¶ 2; PR ¶ 2.)  In March and April 2005, Plaintiff and the Chairman of the Authority entered into an Agreement of Sale for the property with a number of contingencies.  (DSUF ¶ 3; PR ¶ 3.)

Plaintiff's Preliminary Subdivision Plan, however, was rejected by Defendant, and, on October 24, 2006, Plaintiff filed a land use appeal in the Delaware County Court of Common Pleas.  (Def.'s Ex. 3.)  That appeal was denied on January 7, 2008, by Delaware County Court of Common Pleas Judge Joseph Cronin, on the grounds that the Preliminary Subdivision Plan failed to comply with the substantive provisions of Defendant's Subdivision and Land Development Ordinance.  (Def.'s Ex. 4.)

Plaintiff filed an appeal to the Pennsylvania Superior Court, and subsequently, on July 16, 2009, Judge Cronin issued an explanatory opinion, finding that Defendant did not abuse its discretion or commit an error of law in denying Plaintiff's Plan.  (Id.)  The matter remained pending on appeal in the Pennsylvania Superior Court until June 3, 2010, when the parties settled their dispute and entered into a stipulation.  (Id.)  In turn, the Pennsylvania Superior Court stayed the appellate briefing schedule and remanded the matter back to the Court of Common Pleas to review and approve the proposed stipulation.  (Id.)

Despite their settlement, however, the parties could not reach agreement on a final land subdivision plan, and Plaintiff filed a Petition to Enforce Settlement Agreement in the Delaware County Court.  (Def.'s Ex. 3.)  Judge James Proud of that court retained an engineer to review the various issues in dispute in the subdivision plan.  (DSUF ¶13.)  On December 21, 2011, Judge Proud issued an order adopting the report of the engineer, who indicated that there were certain "clarifications" in Plaintiff's plan that needed to be resolved prior to approval of a final land development plan. (Def.'s Ex. 7.)   Following this order, in December 2013, Plaintiff submitted final land development plans to Defendant, which again denied approval.  (DSUF ¶¶ 20, 30; PR ¶¶ 20, 30.)

On June 30, 2014, Plaintiff filed a Petition for Contempt, and a hearing was held on July 15, 2015. (Def.'s Ex. 3.)  This hearing is the last activity reflected on the case docket, and, to date, the state litigation remains open, with Plaintiff' Petition to Enforce Settlement and Petition for Contempt unresolved.  (Def.'s Ex. 3.)

Lisa Catania, a professional engineer retained by Defendant, offered deposition testimony regarding the problems with Plaintiff's development plans.  She indicated that the deed to the property at issue is in the name of Muckinipates Sewer Authority.  (DSUF ¶ 19; PR ¶ 19.)  She further explained that the property has a pipeline easement dating back to 1947 with an existing 35' wide pipeline right-of-way, requiring a minimum distance of 25' between the pipeline and the proposed dwelling units.  (DSUF ¶ 25; PR ¶ 25.)  According to Ms. Catania, this easement cannot be relocated within the street's right-of-way due to emergency issues that might arise.  (DSUF ¶¶ 25–26; PR ¶¶ 25–26.)  Ms. Catania opined that the 20' wide easement in Plaintiff's final development plans does not satisfy the necessary parameters for a development with eighty homes.  (DSUF ¶¶ 22–23; PR ¶¶ 22–23.)   Ultimately, Ms. Catania believed that Plaintiff failed to submit the appropriate documentation and calculations necessary for a final land development plan to be approved.  (DSUF ¶ 28; PR ¶ 28.)

Plaintiff admitted that the property has a gas/oil pipeline easement, and that it never obtained an agreement from the pipeline company that owns that easement to allow the easement to be either removed or moved to another location.  (DSUF ¶ 9; PR ¶ 9.)  Plaintiff also does not dispute that in order to complete the plans in accordance with all ordinances and laws, it would have to purchase a piece of property from Defendant, which it has not done.  (DSUF ¶ 10; PR ¶ 10.)

Plaintiff's principal, Davoud Baravordth, testified that the affordable housing that would have been offered pursuant to its 2005–06 land development plan would have cost $199,000 to $299,000. (DSUF ¶ 16; PR ¶ 16.)  Baravordth also testified that, in 2008, the former mayor of the Borough of Norwood, George McClosky, stated that the Borough did not want African Americans.  (DSUF ¶ 8; PR ¶ 8.)  Former Mayor McClosky no longer held office as of January 6, 2014, and passed away several

years ago. (DSUF ¶¶ 8, 18; PR ¶¶ 8, 18.)  Plaintiff indicated "that was the only time [he] recall[ed] having a conversation from anyone who was an official of the Borough." (Def.'s Ex. 1, Dep. of Davoud Baravordth ("Baravordth Dep."), 33:18–20.)  Bill Gavin, the President of Borough Council of Norwood for the past nine years, could not recall any discussions with anyone in the Borough, including the former mayor, about the development issue, and he never discussed the demographics of the people who might buy townhouses in Plaintiff's project. (DSUF ¶ 17; PR. ¶ 17.)

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party. Id.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.

4

Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001).  Summary judgment is appropriate if the non-moving party provides merely colorable, conclusory or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  Id. at 252.  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).   Moreover, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 241 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

### III.    DISCUSSION

As set forth above, Plaintiff brings claims under § 1983 and the Fair Housing Act.  Defendant seeks summary judgment on several grounds including the statute of limitations, failure to prove the elements of the claims, and standing.  As I find that Defendant has met its summary judgment burden in establishing that both claims are untimely under the relevant statutes of limitations, I focus solely on that contention.

#### A.    Section 1983 Claims

Counts I and III of the Complaint assert claims under 42 U.S.C. § 1983, which are subject to Pennsylvania's two-year state statute of limitations for personal injury actions.  Ormsby v. Luzerne Cnty. Dep't of Public Welfare Office of Human Servs., 149 F. App'x 60, 62 (3d Cir. 2005); See 42 Pa. Cons. Stat. § 5524.  Federal law governs the accrual date of a § 1983 claim.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  "[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994), overruled in irrelevant part by Rotkiske v. Klemm, 890 F.3d 422 (3d Cir. 2018); see also Kriss v. Fayette County, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) (finding, in zoning decision case, that a cause of action accrues when the fact of injury and its connection to defendant would be recognized by a reasonable person).

Here, the timeline of relevant events is undisputed. By way of recap, Plaintiff filed its land use appeal on October 24, 2006, following rejection of its preliminary plan for subdivision. That land use appeal was denied on January 7, 2008, and Plaintiff sought review from the Pennsylvania Superior Court. On June 3, 2010, the parties settled their dispute and entered into a stipulation, prompting the Pennsylvania Superior Court to remand the matter back to the Court of Common Pleas. On December 23, 2010, after an apparent breakdown in the parties' discussions, Plaintiff filed a Petition to Enforce Settlement Agreement. Upon review by an outside engineer, the Court of Common Pleas issued an order noting that certain "clarifications" needed to be resolved prior to approval of a final land development plan. In accordance with that order, Plaintiff submitted the final land development plans, which were denied by Defendant in December 2013. Thereafter, on June 30, 2014, Plaintiff filed a Petition for Contempt, and a related hearing was held on July 15, 2015. There is no evidence of any actions relating to the property since that date. The Complaint in this action was not filed until May 17, 2021.

Given this timeline, a reasonable person in Plaintiff's shoes would have recognized its claims for discriminatory housing practices no later than December 2013, when Defendant denied Plaintiff's final land development plan. Even assuming, for argument's sake, that the last event that gave rise to Plaintiff's claims was the July 15, 2015 hearing date in the state court, Plaintiff's Complaint—filed almost six years later—is well outside the limitations period.

In an effort to skirt the impact of the statute of limitations, Plaintiff urges that Defendant's ongoing failure to act and approve Plaintiff's plans invokes the continuing violations doctrine. Pursuant to the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). To

6

benefit from the doctrine, a plaintiff must establish both: (1) that "the last act evidencing the continuing practice falls within the limitations period" and (2) that "the defendant's conduct is more than the occurrence of isolated or sporadic acts." Id. at 292. The continuing violations doctrine does not apply to injuries that occurred before the filing period if the plaintiff was aware of those injuries at the time they occurred. Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 417 n.6 (3d Cir. 2003). The doctrine focuses "solely on 'continual unlawful acts, not continual ill effects from an original violation.'" Gould v. Borough, 615 F. App'x 112, 116 (3d Cir. 2015) (quoting Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 423 (3d Cir. 2005)). "[A] government official's refusal to undo or correct [a] harm [caused by the official's unlawful conduct] is not an affirmative act for purposes of establishing a continuing violation." Id. (alterations in original) (internal quotation marks omitted).

In Cowell v. Palmer Twp., 263 F.3d 286 (3d Cir. 2001), the plaintiff brought takings and due process claims under § 1983 alleging that the defendant township interfered in the plaintiff's land development plans by imposing two municipal liens on the plaintiff's properties. Id. at 289. In the face of statute of limitations argument, the plaintiff alleged that the continuing violations doctrine applied because the two municipal liens were continuing violations until they were either lifted or expunged. Id. at 291. The United States Court of Appeals for the Third Circuit rejected this theory, noting that the focus of the continuing violations doctrine is "on the affirmative acts of the defendants" and that neither the mere existence of the liens nor the townships refusal to remove the lien constituted such a continuing violation. Id. at 293.

Similarly, in Gould v. Borough, 615 F. App'x 112 (3d Cir. 2015), the plaintiff brought § 1983 claims against the defendants, a town council and zoning hearing board, alleging that defendants (a) improperly denied his application for certain zoning variances, and (b) subsequently defended their conduct against plaintiff's challenges in the Pennsylvania courts. Id. at 113–14. When the defendants asserted that the claims were untimely, the plaintiff invoked the continuing violations doctrine. Id. at

7

116. The Third Circuit declined to apply this doctrine, finding that the plaintiff knew of defendants' alleged misapplication of the zoning ordinances and misrepresentation of the content of those ordinances to the state courts more than two years before the lawsuit was filed. Id. It went on to note that state court filings in which the defendants denied engaging in any fraud affecting the outcome of the lower court proceedings were nothing more than "refusals by defendants to correct the alleged ongoing harm of their misconduct" and not "affirmative acts for purposes of the continuing violations doctrine." Id. at 116–17. The Court also determined that rulings by the state courts on the state court litigation were not "continual unlawful acts" by defendants but rather "continual ill effects" of their alleged misconduct.[2] Id. at 117.

The case before me is analogous to both Cowell and Gould in that the Defendant's alleged offending act was its 2006 rejection of Plaintiff's preliminary plan for subdivision. Arguably, Defendant's settlement agreement with Plaintiff and subsequent denial of Plaintiff's final land development plans in December 2013 could be deemed an additional affirmative act under the continuing violations doctrine. But Defendant's refusal to undo or correct the alleged harm throughout the litigation in the Pennsylvania state courts does not, under the Third Circuit's dictates, constitute an additional affirmative act that invokes the continuing violations doctrine. Any rulings or absence of action by the state court are simply the "continual ill effects" of Defendant's alleged misconduct.

---

[2] Plaintiff cites to the case of Larsen v. State Employees' Retirement System, 553 F. Supp. 2d 403 (M.D. Pa. 2008) for the proposition that the applicability of the continuing violation doctrine does not depend on affirmative acts by defendant. There, the plaintiff sued the State Employees' Retirement System and the State Employees' Retirement Board challenging the calculation and administration of his retirement benefits. Id. at 409–10. The Court determined that the continuing violations doctrine applied because *defendants themselves* engaged in a five-year delay in ruling on the appeal of his benefits determination and stonewalled his attempts to correct the miscalculation. Id. at 417. In other words, unlike in Cowell and Gould, the defendants' inaction on the plaintiff's appeal constituted an affirmative act. Id. ("[Plaintiff's] due process claim based on the delay in his administrative appeal is bound up with his claims that the [] defendants deprived him of his pension without requisite process and is directly connected to the alleged initial wrongs of these defendants.")
  Here, by contrast, Defendant's affirmative acts were the denials of Plaintiff's land use plans. Defendant has no role in the continuing delay in the Pennsylvania state courts.

Alternatively, Plaintiff urges that it has produced evidence of two actions attributable to Defendant within the limitations period, and thus the continuing violations doctrine should apply.[3] First, Plaintiff cites to the deposition testimony of its principal, Davoud Baravordth, who was asked whether—aside from the former mayor's 2008 comment—any borough official ever made a discriminatory comment. Baravordth replied:

> [W]ithin the past three years, a company contacted me, one of those homebuilders. They wanted to buy the project from me, and I told them what the status of the ground is right now, but they still insisted that they want to look at it. And we met at the gate . . . where the Muckinipattis site is. And he got there before I did. And there was a police officer parked there. . . . And this guy got there before me and talked to the cops. And the cop told him, 'This is a very strict borough. They don't want any minorities in this development or here. They will fight it.' And that's what the cop told the gentlemen from this company who was interested in buying the property.

(Def.'s Ex. 1, Dep. of Davoud Baravordth ("Baravordth Dep.") 36:11–37:8.)

This testimony is insufficient to bring the case within the limitations period for at least two reasons. This evidence constitutes triple hearsay, involving what unknown borough officials (the "they" referred to by the officer) communicated to an unnamed police officer, who then communicated it to an unnamed housing builder, who communicated it to Baravordth. Fed. R. Evid. 802. In order to survive summary judgment, a non-moving party must point to admissible evidence which establishes the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e). Hearsay statements may be considered at summary judgment only if they are capable of admission at trial. Shelton v. Univ. of Medicine & Dentistry of NJ, 223 F.3d 220, 223 n.2 (3d Cir. 2000). Plaintiff, however, has not

---

[3]     Plaintiff also claims that Defendant has failed to meet its summary judgment burden because "Defendant provides no support for its assertion that there have been no 'actions attributable to the Borough of Norwood since the two parties had open court hearings in July 2015.'" (Pl.'s Resp. Opp'n Summ. J. 6 (quoting Def.'s Mem. Supp. Summ. J. 11.)) This argument flips the summary judgment standard on its head and asks that Defendant prove a negative. Once Defendant, as the moving party, identifies a lack of genuine, triable issues, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue of material fact. "[A] party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

established that any single layer of hearsay, let alone all three layers, would be admissible at trial. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009). Indeed, during his deposition, Baravordth could not recall either the name of the housing builder or the name of the police officer. (Baravordth Dep. 37:12–39:23.)

Even assuming this evidence was admissible, Plaintiff does not explain how the police officer's assessment of whether the Borough would accept a low-income housing development constitutes an affirmative act by Defendant that restarted the statute of limitations. Plaintiff has offered no evidence to establish that a police officer has any influence over Zoning Board decisions.

Plaintiff also contends that, in October 2019—within the two-year limitations period—Defendant purportedly voted to purchase the property through a county-backed open spaces grant, an act which "support[s] the inference that Defendant continued to endeavor to thwart Plaintiff's efforts to develop the property, for the purpose of excluding from the borough black homeowners, within two years of the filing of the complaint." (Pl.'s Resp. Opp'n Summ. J. 7.) In support of this "fact," Plaintiff cites to minutes from an October 23, 2019 meeting, which state that a motion was made "approving the Awards for Delco Greenways, the County's Open Space and Recreation Municipal Grant Program." (Pl.'s Ex. 2.)

These minutes, however, provide no support for any inference that Defendant voted to purchase the property at issue. Rather, the minutes only reference the countywide plan for Open Space purchase, of which Defendant Borough of Norwood was a part. There is no evidence that Defendant ever made any attempt to purchase the property at issue.

In short, Plaintiff can identify no act of discrimination that occurred within approximately six years of the filing of the Complaint. Given the two-year statute of limitations, the claims are untimely and must be dismissed.

### B. Fair Housing Act Claim

The statute of limitations analysis under § 1983 applies equally to Plaintiff's claim under the Fair Housing Act ("FHA"). The FHA provides that, "[a]n aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613(a)(1)(A). The computation of that two-year period does not include "any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." Id. § 3613(a)(1)(B).

As set forth in detail with respect to the § 1983 claim, Plaintiff instituted this action well more than two years after the "alleged discriminatory housing practice." Moreover, Plaintiff is not entitled to tolling under 42 U.S.C. § 3613(a)(1)(B), as it did not institute any administrative proceeding under the FHA. Indeed, it is undisputed that, throughout the state court proceedings, Plaintiff never alleged any discriminatory practices or racial pretext on the part of Defendant. As such, I deem the FHA claims untimely.

### IV. CONCLUSION

For all of the foregoing reasons, Plaintiff's claims are time barred under the statutes of limitations for both § 1983 and the FHA. Accordingly, I will grant summary judgment in favor of Defendant and against Plaintiff on the entirety of the Complaint. An appropriate order follows.